# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| **ROBERT BIANCHI,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 16-11330-FDS |
| **SEAN MEDEIROS,** | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON RESPONDENT'S
## MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS

**SAYLOR, J.**

This is a *pro se* petition for a writ of habeas corpus made pursuant to 28 U.S.C. § 2254. On May 2, 1995, a jury in Suffolk County Superior Court convicted petitioner Robert Bianchi of charges of first-degree murder and violating a protective order. He was sentenced to life in prison. The habeas petition alleges (1) that his right to an open trial was violated by the closure of empanelment proceedings; (2) that his right to a fair trial was violated by the court's order requiring him to face forward at all times; (3) that he received ineffective assistance of counsel; and (4) that the court erred in excluding certain evidence demonstrating his state of mind at the time of the murder.

Respondent has filed a motion to dismiss the petition as time-barred. For the following reasons, the motion to dismiss will be granted.

**I.   Background**

In *Commonwealth v. Bianchi*, 435 Mass. 316, 317 (2001), the Massachusetts Supreme Judicial Court summarized the murder of Donna Bianchi as follows:

> In the early morning hours of April 17, 1994, Donna Bianchi was beaten and choked with a night stick and sprayed with mace in her home by her estranged husband, Robert L. Bianchi, Jr. She became fearful that Bianchi was going to kill her and her child, and obtained an abuse prevention order against him the following day.
>
> On May 6, 1994, Donna dropped her seven-month old son off at her sister-in-law's house on her way to work. As she left the house, Bianchi, who had been following her for several days, confronted her. She began screaming and running away from him. As he pursued her, she tripped and fell. He picked her up by the hair, prodded her in the back with a gun, and herded her toward the street where he shot her twice in the back. After she fell to the ground, paralyzed by one of the first two bullets, Bianchi placed the muzzle of the gun on her chest, and fired three more times, pausing between shots.

On May 2, 1995, a jury convicted Bianchi of first-degree murder, under the theories of deliberate premeditation with malice aforethought and extreme atrocity or cruelty, and of violating a protective order. (*Id.*; Pet. Ex. A). He was sentenced to a term of life in prison. (Pet. Ex. A).

Following his conviction, Bianchi filed a timely notice of appeal and a motion for a new trial. (*Commonwealth v. Bianchi*, 435 Mass. at 316). The appeal was stayed pending resolution of the motion for a new trial, which was eventually denied on March 31, 2000. (Pet. Ex. A).

On November 10, 2000, Bianchi wrote his appellate attorney, Dana Curhan, urging him to include a claim concerning the ineffective assistance of his trial counsel, Robert George, as a basis for the appeal to the Massachusetts Supreme Judicial Court ("SJC"). (Pet. Ex. B).

On November 9, 2001, the SJC affirmed Bianchi's conviction and the denial of his motion for a new trial. (*Commonwealth v. Bianchi*, 435 Mass. at 330). The SJC did not consider any claim for ineffective assistance of counsel. (*Id.* at 322–30). Bianchi did not file a petition for a writ of certiorari in the United States Supreme Court.

On November 13, 2001, Bianchi wrote a letter to Donald Bronstein at the Committee for Public Counsel Services ("CPCS"). The letter requested that Bronstein be appointed a screener or other counsel for proceedings concerning post-conviction relief based on the fact that Curhan

had failed to present the ineffective assistance of counsel claim. (Pet. Ex. C). CPCS denied that request. (Pet. Ex. JJJJ ¶ 2).

Bianchi contends that in December 2001 he "began the long and arduous process of assembling any mat[]erials that could aid [him] in researching [his] own case." (*Id.* ¶ 3). He alleges that by September or October 2002, he was prepared to file a motion for a new trial *pro se* under Mass. R. Crim. P. 30(b), but before doing so, he telephoned CPCS in another attempt to obtain counsel or a screener. (*Id.* ¶¶ 5–6).

Bianchi alleges that he informed an unnamed person at that office that he was concerned about losing his "appellate rights in federal court." (*Id.* ¶ 6). He alleges that the person advised him to file a motion for reduction of verdict or new trial under Mass. R. Crim. P. 25(b)(2) instead of the Rule 30(b) motion. (*Id.* ¶ 7). He further alleges that he was advised to file nothing but the Rule 25 motion, to reserve his right to amend the motion at a later date, and to request that the reviewing court not construe the motion as a Rule 30 motion. (*Id.*). He was told that if he filed a Rule 30(b) motion that was immediately denied, he would have "greater difficulty in filing any subsequent Rule 30 motions." (*Id.* ¶ 6).

On October 20, 2002, Bianchi filed a *pro se* motion for reduction in verdict or new trial pursuant to Mass. R. Crim. P. 25(b)(2). (Pet. Ex. X, Pet. Ex. JJJJ ¶ 54). The motion consists of a single page. It appears to be a form document on which Bianchi filled in blanks, including his crime, the court that convicted him, and his name. (Pet. Ex. H). The motion provided as reasons for its allowance "that the verdict was against the weight of the evidence, and that there was insufficient evidence of first degree murder." (*Id.*). It did not include any legal argument or evidence in support of that claim. It further stated that "[t]he defendant respectfully requests that the Court hold this motion in abeyance while he attempts to obtain counsel" and that he "does

3

not wish this motion to be construed as a motion pursuant to Mass. R. Crim. P. 30." (*Id.*) (emphasis in original). The parties agree that the state court has never taken any action on the Rule 25 motion. (Resp. Mem. at 2; Pet. Mem. at 2).

On November 21, 2002, CPCS assigned attorney James Couture to Bianchi's case. (Pet. Ex. J). In early 2003, Bianchi mailed various materials and his trial transcripts to Couture for review. (Pet. Ex. JJJJ ¶ 12). After a period of time, Bianchi contacted CPCS; he alleges that he was informed that Couture had the matter in hand, and that the Rule 25 motion would "hold the flood gates" for further appeal. (*Id.* ¶ 13). In late 2003, he began to grow concerned because he had not heard from Couture for some time. (*Id.* ¶ 16). In May or June 2004, he became sufficiently worried about the lack of communication that he planned to file his own Rule 30(b) motion, but was again allegedly assured by someone at CPCS that Couture "had the matter under control." (*Id.* ¶ 17). Despite those reassurances, Bianchi began conducting his own factual and legal research. (*Id.* ¶ 18).

Throughout 2006 and into 2007, Bianchi grew increasingly concerned about Couture's inaction, but alleges that he was again assured by someone at CPCS that Couture would handle the case. (*Id.* ¶ 25). At some point, he learned that Couture "was in no condition to handle anyone's case" and resolved to sever the relationship. (*Id.* ¶ 26). Thereafter, he attempted to retrieve his transcripts and trial file from Couture and CPCS. (*Id.* ¶ 29). On August 29, 2007, attorney David Nathanson of CPCS sent a letter to Bianchi in response to his request for transcripts, stating that he could not compel Couture to return the documents because "[he] ha[s] almost no leverage over Attorney Couture at this point as he no longer has any active cases with [CPCS]." (Pet. Ex. R). The letter directed Bianchi to contact the Board of Bar Overseers if Couture did not provide the transcripts. (*Id.*). Bianchi contends that he finally re-acquired his

4

transcripts in 2008, at which time, he began to assemble a Rule 30(b) motion. (Pet. Ex. JJJJ ¶¶ 33–34).

On September 30, 2013, Bianchi, acting *pro se*, filed a second motion for a new trial pursuant to Mass. R. Crim. P. 30(b). (Pet. Ex. X). That motion was denied on November 18, 2014. (*Id.*). On January 17, 2015, Bianchi filed a petition for discretionary review by a single justice pursuant to Mass. Gen. Laws ch. 278, § 33E. (*Id.*) That petition was denied on June 9, 2016. (Pet. Ex. Z).

On June 28, 2016, Bianchi filed the present habeas petition pursuant to 28 U.S.C § 2254. Respondent has moved to dismiss the petition on the basis that it is time-barred.

Bianchi contends that during the more than fifteen years between his conviction and the filing of the present habeas petition, he was diligent in pursuing his rights. Beginning in December 2005, he contacted multiple attorneys requesting assistance. (Pet. Ex. JJJJ ¶¶ 22, 35; Pet. Ex. YY–HHH). He contends that through his research he discovered that the court had imposed an unlawful sentence concerning his conviction for violating a protective order. (Pet. Ex. JJJJ ¶ 38). He also states that he conducted research into possible defenses and reviewed evidence demonstrating his mental health as a young man throughout the period. (*Id.* ¶ 39). Eventually, he wrote a Rule 30(b) motion that was more than 568 pages long, although it was apparently never filed. (*Id.* ¶¶ 33–34).

Bianchi contends that his ability to move his case forward was hampered by his medical condition. He contends that starting in January 2004, he suffered from periods of prolonged and serious illness due to kidney stones. (*Id.* ¶ 20). He states that he was seriously ill for most of 2004 and 2005, was hospitalized twice within a three-week period in 2006, had a "very severe health issue of the same nature" in 2010, was hospitalized in April 2011, and was again

5

hospitalized in 2012. (*Id.* ¶¶ 20, 40, 39, 42).

## II. Analysis

Respondent has moved to dismiss the petition on the ground that it is time-barred.

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed a one-year limitations period for habeas corpus petitions by state prisoners. 28 U.S.C. § 2244(d). As relevant here, the limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). Judgments are considered "final" for AEDPA purposes "when the ninety-day period for seeking certiorari expire[s]." *Neverson v. Farquharson*, 366 F.3d 32, 36 (1st Cir. 2004).

The statute excludes from the one-year limitations period the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2). An application for post-conviction review is "properly filed" "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). An application is "pending" "from the time it first is filed with the state trial court, until the final disposition of a timely appeal or request for allowance of appeal." *Currie v. Matesanz*, 281 F.3d 261, 267 (1st Cir. 2002). State law controls whether an application qualifies as "properly filed" and "pending" to toll the limitations period under AEDPA. *See Holmes v. Spencer*, 685 F.3d 51, 60 (1st Cir. 2012) ("*Holmes I*"); *Herbert v. Dickhaut*, 695 F.3d 105, 108 (1st Cir. 2012).

The one-year limitations period began to run on Bianchi's motion on February 7, 2002, 90 days after the SJC affirmed his conviction. Bianchi filed the one-page Rule 25 motion on

October 20, 2002. He contends that the filing of that motion constitutes an "application for post-conviction review" that was "properly filed" and remains "pending," thereby tolling the AEDPA limitations period from October 20, 2002, until June 28, 2016, when he filed the petition.

1. **Rule 25 Motion**

Under Mass. R. Crim. P. 25 ("Motion for Required Finding of Not Guilty"), a court shall enter a finding of not guilty "after the evidence on either side is closed" for any charge for which the "evidence is insufficient as a matter of law to sustain a conviction." Mass. R. Crim. P. 25(a). In ruling on a motion brought pursuant to Rule 25, the court must determine "whether the evidence, in its light most favorable to the Commonwealth . . . is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged." *Commonwealth v. Latimore,* 378 Mass. 671, 676–77 (1979). Massachusetts Rule 25 is modeled after Fed. R. Crim. P. 29 ("Motion for a Judgment of Acquittal"), which similarly directs a judge to enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a).

Under the second sentence of Mass. R. Crim. P. 25(b)(2), if a jury returns a verdict of guilty, "the judge may on motion set aside the verdict and order a new trial, or order the entry of a finding of not guilty, or order the entry of a finding of guilty of any offense included in the offense charged in the indictment or complaint." Unlike the analogous federal provision, which prescribes a two-week deadline, Massachusetts Rule 25(b)(2) does not prescribe a time limit for filing a motion under the second sentence. *Commonwealth v. Aguiar*, 400 Mass. 508, 511 n.3 (1987) (analogizing a motion brought under the second sentence of Rule 25(b)(2) to a motion brought pursuant to Rule 30(b) and finding that, while the first sentence of Rule 25(b)(2) imposes a time limit for filing a motion, the second sentence imposes no such limit).

7

It is far from clear whether Bianchi's motion under Mass. R. Crim. P. 25(b)(2) should be considered an "application for post-conviction review" sufficient to toll the AEDPA limitations period. A court in this district has previously found that the fact that Massachusetts Rule 25 is modeled on Federal Rule 29 suggests that federal courts should not treat Rule 25 motions as motions for post-conviction review under AEDPA. *Clarke v. Spencer*, 585 F. Supp. 2d 196, 203 (D. Mass. 2008), *aff'd*, 582 F.3d 135 (1st Cir. 2009). That court, however, nonetheless treated the petitioner's Rule 25 motion as a motion for post-conviction review because "Massachusetts law allows . . . a Rule 25 motion to be treated as a motion under Rule 30 for collateral post-conviction relief, if the motion is the same in nature and substance." *Id.*

Here, Bianchi specifically requested that his Rule 25 motion *not* be treated as a Rule 30 motion. Under the circumstances, it is highly doubtful that the Rule 25 motion should be treated as a motion for post-conviction review under AEDPA. However, "in an excess of caution," this Court will assume, without deciding, that the Rule 25 motion constitutes a motion for post-conviction review because the claim is time-barred for other reasons. *Id.*

### 2. **Properly Filed**

In order to toll the limitations period under AEDPA, a state-court motion for post-conviction review need not only be "filed," it must also be "properly filed." *Artuz v. Bennett*, 531 U.S. at 8. In order to be *properly* filed, an application must comply with applicable laws and rules governing filings including, for example, "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.* at 8–9.

The Rule 25 motion filed by Bianchi was a placeholder, filed with the explicit intent to toll the limitations period under AEDPA. It did not provide any legal argument or factual basis

8

why it should be allowed. Instead, the one-page motion appears to be a form document on which he filled in certain basic information, such as his crime and the court in which he was convicted. It also requested that the court not construe the motion as a Rule 30 motion and hold it in abeyance while Bianchi sought counsel. He apparently has never requested that the state court review the motion and rule upon it, nor has the court ever done so. Indeed, no court could reasonably grant the motion in its present form, because it provides no legal or factual basis whatsoever on which a court could grant relief.

There appears to be no Massachusetts case law concerning whether such a bare-bones document qualifies as a "properly filed" motion under the second sentence of Mass. R. Crim. P. 25(b)(2). There is, however, case law analyzing what constitutes proper filing of a motion under Mass. R. Crim. P. 29 ("Motion for Revision or Revocation of a Sentence"), which provides a sixty-day limitations period after the imposition of a sentence.[1] In *DeJesus*, an applicant brought a Rule 29 motion to revise or revoke his sentence but did not include a supporting affidavit or state any reason why the motion was being filed. *See Commonwealth v. DeJesus*, 440 Mass. 147, 147–48 (2003). The SJC found that such a perfunctory motion, although timely filed, was not "properly filed" and therefore the later filings made by the applicant to supplement the motion were time-barred. *Id.* at 152. It reasoned that the purpose of a Rule 29 motion is to "permit a judge to reconsider the sentence he has imposed and determine, in light of the facts as they existed *at the time of sentencing,* whether the sentence was just." *Id.* (quoting *Commonwealth v. Layne,* 386 Mass. 291, 295 (1982). Because a Rule 29 motion "can rely only on facts or circumstances that existed at the time of sentencing," the SJC could not "perceive any valid reason why a defendant could not identify at least some basis for the motion when it is

---

[1] Under First Circuit precedent, a Massachusetts Rule 29 motion constitutes a motion for post-conviction review such that its filing tolls the AEDPA limitations period. *Holmes I*, 685 F.3d at 60.

filed." *Id.* Ultimately, the court determined that "to be properly filed, a [Rule 29] motion to revise or revoke must be accompanied by an affidavit, or otherwise indicate the grounds on which it is based." *Id.*

A Rule 25 motion, like a Rule 29 motion, necessarily must be based on evidence from a limited time period, because the question is whether the evidence admitted *at the trial* was insufficient as a matter of law to sustain a conviction. *Commonwealth v. Semedo*, 456 Mass. 1, 8 (2010). As with Rule 29, there is no "valid reason" why an applicant filing a motion under the second sentence of Rule 25(b)(2) "could not identify at least some basis for the motion when it is filed." *DeJesus*, 440 Mass. at 152. Accordingly, it is reasonable to infer that a Rule 25 motion must identify "at least some basis" for its allowance in order to toll the AEDPA limitations period. *Id.* at 152.[2]

Like the Rule 29 applicant in *DeJesus*, the Rule 25 motion at issue here provided no ground for relief and simply reserved the right to supplement the motion. In addition, the motion explicitly requested that it not be considered until a later time. Therefore, the bare-bones, placeholder Rule 25(b)(2) motion filed by Bianchi was not "properly filed" and does not toll the limitations period. *See Holmes v. Spencer*, 685 F.3d 51, 61 (2012) ("*Holmes I*") (applying *DeJesus* to the AEDPA context).

In short, Bianchi's one-page motion—which included no facts, no legal argument, and no real request for relief—was not a "properly filed" motion for post-conviction review within the meaning of AEDPA. And to be clear, this is not simply a technical exercise of interpreting a

---

[2] The Court is cognizant of the fact that in some ways Mass. R. Crim. P. 29 is not a perfect analogue for Mass. R. Crim. P. 25. Rule 29 itself provides stricter procedural requirements than Rule 25, as a party filing a motion under Rule 29 must also file an affidavit in support of the motion. Mass. R. Crim. P. 29. The SJC based its opinion in *DeJesus* in part on that affidavit requirement. By contrast, Rule 25 does not explicitly require an applicant to file an affidavit in conjunction with the motion. Nonetheless, the logic and reasoning of *DeJesus* plainly compels the conclusion that a bare-bones filing under Rule 25 is not adequate to toll the limitations period.

state procedural rule. A contrary result would eviscerate the timeliness requirements of AEDPA, because any defendant convicted in Massachusetts state court could file such a placeholder motion, request that the court take no action on that motion, and thereby toll the AEDPA limitations period indefinitely. Under the circumstances, there is no sensible reason to permit such a result.

B. **Equitable Tolling**

In the alternative, Bianchi contends that the limitations period should be equitably tolled in order to allow him to proceed to the merits of his claims. In substance, Bianchi seeks to toll the one-year limitations period of AEDPA indefinitely.

Under certain circumstances, the AEDPA limitations period may be equitably tolled. *Holland v. Florida,* 560 U.S. 631, 649 (2010). In order to establish grounds for equitable tolling, a habeas petitioner must demonstrate both "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Riva v. Ficco*, 615 F.3d 35, 39 (1st Cir. 2010) (quoting *Holland,* 560 U.S. at 649 (2010) (quotations omitted)); *see also Holmes v. Spencer*, 822 F.3d 609, 612 (1st Cir. 2016) ("*Holmes II*") (describing the test as providing "two necessary conditions"). Courts apply that standard subject to the caution that "equitable tolling is 'the exception rather than the rule.'" *Holmes I*, 685 F.3d at 62 (quoting *Trapp v. Spencer,* 479 F.3d 53, 59 (1st Cir. 2007)).

*Holmes I* presents circumstances similar to those presented here. In that case, a habeas petitioner, Holmes, had brought a "placeholder" motion under Mass. R. Crim. P. 29 without a supporting affidavit or specifying the grounds for its allowance, and stating that he reserved the right to supplement the petition at the time of a hearing. *Id.* at 54, 63. As here, the court found that Holmes had not "properly filed" his Rule 29 motion because he had provided no grounds for

11

relief, and therefore the filing of the motion alone did not toll the limitations period. *Id.* at 61. Holmes claimed that he filed the placeholder Rule 29 motion based on the advice of prison officials and his understanding that such filings were standard practice and tacitly approved at the time. *Id.* at 63–65. In reviewing that evidence, the court was "troubled . . . by the possibility that at the time Holmes filed his Rule 29 Motion, he was led to believe that his Motion was in fact properly filed, even though it would later prove to have been improper." *Id.* at 63. It concluded that "[i]f in fact prison officials intentionally or inadvertently caused Holmes to believe that his filing was sufficient, this might qualify as an 'extraordinary circumstance'" to warrant equitable tolling, and remanded to the district court to develop the record concerning whether there were grounds for equitable tolling. *Id.* at 65, 67.

Here, Bianchi claims that he received advice from an anonymous individual at CPCS that his placeholder Rule 25 motion would toll the limitations period. He contends that the advice constitutes extraordinary circumstances to warrant equitable tolling. But even assuming that the advice that Bianchi purportedly received from CPCS constitutes such extraordinary circumstances, equitable tolling is nevertheless unjustified because he has not shown that he has been pursuing his rights diligently.

A brief review of the timeline is warranted. The SJC upheld Bianchi's conviction on November 9, 2001, and the limitations period began to run 90 days later, on February 7, 2002. On October 20, 2002, with 110 days left in the limitations period, he filed a Rule 25 motion. According to Bianchi, he had been prepared to file a Rule 30(b) motion at that time, but instead chose to file the Rule 25 motion based on advice of CPCS. Between November 21, 2002, when CPCS assigned Couture to his case, and August 29, 2007, when CPCS sent him a letter telling him that Couture "no longer has any active cases with [CPCS]," Bianchi had at least some reason

12

to believe that he was represented by counsel. He contends that during that period he was conducting his own research, in addition to relying on Couture's representation. After some wrangling with CPCS and Couture, he re-acquired his transcripts in August 2008.

Thus, after August 2008, Bianchi had access to all the materials necessary to pursue his claims, and should have been appropriately motivated to do so on his own, even if he no longer was represented. On September 30, 2013, more than five years after his transcripts were returned—and eleven years, seven months, and twenty-three days after his convictions became final—he filed a second motion for a new trial. During that interim, he contends that despite significant periods of illness, he spent time learning the law, researching defenses, and seeking representation.

Although a petitioner seeking to establish equitable tolling need not demonstrate "maximum feasible diligence," he must demonstrate, at least, "reasonable diligence." *Holland*, 560 U.S. at 653. Here, Bianchi purportedly believed that he stopped the limitations clock with 110 days left. Nearly eleven years passed between the time that he filed his Rule 25 motion and the time that he filed his second motion for a new trial under Rule 30. During that time, he claims that he discovered an error in his sentencing and wrote a 568-page motion for a new trial that was never filed. Those actions demonstrate that he was clearly capable of bringing a habeas petition on his own. *See Sanders v. Tilton*, 475 F. App'x 118, 120 (9th Cir. 2012). Rather than do so in a timely manner, for more than a decade he filed nothing, supposedly relying on the telephone advice of an unnamed CPCS employee, and expecting the limitations period to be tolled indefinitely. There is no evidence that he ever attempted to verify independently the advice offered. Nor is there evidence that he ever requested that the state court hear his Rule 25 motion. Although he did take some steps to pursue his rights, his inaction during the many years

13

that his Rule 25 motion sat in limbo do not demonstrate the kind of urgency necessary to establish "reasonable diligence" in pursuing his right to post-conviction relief. The amount of time that elapsed is far too long, and the amount of action is far too little.

Bianchi has therefore failed to carry his burden to show that his case qualifies as the "exception rather than the rule." *Holmes I,* 685 F.3d at 62 (quoting *Trapp*, 479 F.3d at 59).

The limitations period should not be equitably tolled and therefore the petition is time-barred.

### III. Conclusion

For the foregoing reasons, respondent's motion to dismiss is GRANTED, and the Petition for a Writ of Habeas Corpus is DISMISSED.

**So Ordered.**

Dated: April 25, 2017

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge